Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/25/2022 09:05 AM CDT

In re Estate of Charles G. Clark, deceased.
Catherine Tucker, appellant, v. Marjorie E.
Wilkins and Genevieve L. Netz, Copersonal
Representatives, appellees.

___ N.W.2d ___

Filed October 18, 2022.    No. A-21-897.

1. **Wills: Trusts.** The interpretation of the words in a will or a trust presents a question of law.
2. **Statutes.** Statutory interpretation is a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
4. **Decedents' Estates.** The difference between strict per stirpes and modern per stirpes is the generation at which shares of the estate are divided.
5. ____. Under a strict per stirpes application, the estate is divided among the decedent's children regardless of whether any survive the decedent.
6. **Decedents' Estates: Wills: Intent.** The cardinal rule concerning a decedent's will is the requirement that the intention of the testator shall be given effect, unless the maker of the will attempts to accomplish a purpose or to make a disposition contrary to a rule of law or public policy.

Appeal from the County Court for Brown County: James J. Orr, Judge. Affirmed.

James D. Gotschall, of Gotschall & Sholes, P.C., L.L.O., for appellant.

Mark D. Fitzgerald, of Fitzgerald, Vetter, Temple, Bartell & Henderson, and Avery L. Gurnsey for appellees.

Moore, Riedmann, and Welch, Judges.

Riedmann, Judge.

## INTRODUCTION

At issue in this appeal is the proper distribution of the proceeds of real estate devised under a will drafted in 1972, prior to the adoption of the Uniform Probate Code. The county court for Brown County sustained the motion for distribution filed by the copersonal representatives of the estate over the objection of one of the devisees. The objector appealed. For the reasons discussed below, we affirm the county court's distribution and determination of shares of heirs.

## BACKGROUND

The facts are undisputed. Charles C. Clark executed a will on January 17, 1972, and its relevant provisions are as follows:

II

I give and devise unto my grandson, Gerald W. Davis, a life estate in the following described property . . . and upon the death of my said grandson, I give, devise and bequeath said real estate described in this paragraph to my heirs at law then living in the proportions they would inherit from me under the intestate laws of the State of Nebraska as they now exist.

III

I give, devise and bequeath the balance remaining of my property, both real and personal, after payment therefrom of the items mentioned in Paragraph I hereof, to my two daughters, Nora B. Snyder and Goldie R. Davis, share and share alike.

Clark died on December 24, 1972. He was survived by his daughters, Snyder and Davis. Snyder had three children, all of whom also had children. Davis had six children, four of whom also had children. Snyder died in 1980, and Davis died in 2007. Gerald W. Davis (Gerald), Clark's grandson who was granted a life estate in the real estate at issue, died on December 29, 2019. At the time of Gerald's death, all of Snyder's children were deceased and four of Davis' children were deceased,

leaving two of Clark's original nine grandchildren and numerous great-grandchildren.

Following Gerald's death, the copersonal representatives of Clark's estate filed a petition requesting the sale of the subject real estate and the determination of shares. They proposed that the two remaining grandchildren each receive one-ninth of the proceeds and that the balance be distributed to Clark's great-grandchildren by right of representation.

Catherine Tucker, one of Snyder's grandchildren and Clark's great-grandchildren, filed an objection, asserting that in 1972, when the will was drafted, Nebraska statutes provided for a distribution method referred to as "strict per stirpes," "classic per stirpes," or "English per stirpes." She proposed that the will be interpreted to determine the distribution as of the date of Clark's death, not Gerald's death. Under her proposed method, the proceeds would be divided with half distributed to Snyder's remaining descendants and the other half distributed to Davis' remaining descendants.

Prior to the hearing on the motion to determine shares, the parties stipulated that if the court accepted the copersonal representatives' interpretation of 1972 intestate law and the will, their schedule of distribution should be followed. The parties also agreed that if Tucker's interpretation is correct, her schedule of distribution should be followed.

The county court found that because Clark had no surviving spouse or children at the time of Gerald's death, Neb. Rev. Stat. § 30-102 (Reissue 1964) required that the proceeds from the real estate be distributed to Clark's "'other lineal descendants in equal shares if in the same degree of kindred, otherwise by representation.'" The county court determined that the copersonal representatives' proposed distribution achieved the appropriate result. The county court found that this was in line with Clark's intention, because otherwise, Clark would have used the same language in paragraph II of his will that he used in paragraph III, simply devising the real estate

"to my two daughters." Following posttrial motions, Tucker timely appealed.

## ASSIGNMENTS OF ERROR

Tucker assigns, combined and restated, that the county court erred in (1) interpretating Nebraska's intestate laws as required by Clark's last will and testament and (2) finding that Clark's children were required to survive the life tenant for distribution to begin at the "'child generation.'"

## STANDARD OF REVIEW

[1] The interpretation of the words in a will or a trust presents a question of law. *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021).

[2] Statutory interpretation is a question of law. *In re Estate of Anderson*, 311 Neb. 758, 974 N.W.2d 847 (2022).

[3] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions. *Id.*

## ANALYSIS

Tucker argues that this appeal is a matter of statutory interpretation and that the county court erred in determining that the distributions should be at the grandchildren level. She argues that the intestate laws dictate that the distribution should be at the child level. However, her argument does not take into account the language of Clark's will which must also be given effect. Based on the language of the will and the intestate statutes existing in 1972, we affirm the county court's order and determination of the shares of heirs.

Clark's will provided that "upon the death of [Gerald], I give, devise and bequeath said real estate described in this paragraph to my heirs at law then living in the proportions they would inherit from me under the intestate laws of the State of Nebraska as they now exist." The applicable intestate law at the time Clark executed his will was § 30-102, which provided in part:

When any person, leaving no husband or wife surviving, shall die, seized of any real estate, or any right thereto, or entitled to any interest therein in fee simple, or for the life of another, not having lawfully devised the same, it shall descend subject to his debts, in the manner following: (1) In equal share to his children, and to the lawful issue of any deceased child by the right of representation; and if there be no child of the deceased living at his death, the estate shall descend to all his other lineal descendants; and if all such descendants are in the same degree of kindred to the deceased, they shall have the estate equally; otherwise they shall take according to the right of representation.

Read together, Clark provided that his heirs living at the time of Gerald's death should inherit the real estate in the manner in which they would inherit from Clark if Clark had died intestate. Tucker argues that because Clark's daughters were alive at the time of Clark's death, the proceeds should be equally divided between the daughters and pass to their surviving heirs. If we were to adopt Tucker's interpretation, under § 30-102 the real estate shares would pass to Snyder and Davis, who were living at the time of his death. But this interpretation requires that we look back to the date of Clark's death and acknowledge that Snyder and Davis were still alive, but simultaneously acknowledge their deaths so that the real estate would pass to their issue. Given the language of Clark's will, we decline to do so. Instead, we interpret Clark's directive as one that requires that we determine his living heirs at the time of Gerald's death and then look to the intestate law of 1972 to determine how they would inherit.

Because Clark's daughters were not living at the time of Gerald's death, the latter portion of § 30-102(1) applies, which states:

[A]nd if there be no child of the deceased living at his death, the estate shall descend to all his other lineal descendants; and if all such descendants are in the same

degree of kindred to the deceased, they shall have the estate equally; otherwise they shall take according to the right of representation.

[4] Tucker relies upon *In re Estate of Evans*, 20 Neb. App. 602, 827 N.W.2d 314 (2013), stating that it decided the very issue before us. In *In re Estate of Evans*, we explained:

The difference between strict per stirpes and modern per stirpes is the generation at which shares of the estate are divided. Strict per stirpes begins at the generation closest to the decedent, regardless of whether there are any surviving individuals in that generation, whereas modern per stirpes begins at the first generation where there is living issue. Thus, the distinction between strict per stirpes and modern per stirpes will be most evident in instances where all of the heirs in the closest degree of kinship are deceased.

20 Neb. App. at 610–11, 827 N.W.2d at 321. Tucker argues that prior to adoption of the Uniform Probate Code, Nebraska operated under the strict per stirpes model, and because Clark executed his will prior to the code's adoption, strict per stirpes applies here. We disagree.

[5] Under a strict per stirpes application, the estate is divided among the decedent's children regardless of whether any survive the decedent; however, § 30-102 expressly stated that

if there be no child of the deceased living at his death, the estate shall descend to all his other lineal descendants; and if all such descendants are in the same degree of kindred to the deceased, they shall have the estate equally; otherwise they shall take according to the right of representation.

Furthermore, in *In re Estate of Evans, supra*, the decedent had not executed a will, whereas in the present case, we are tasked with determining the effect of a testamentary provision which invokes the intestate law. Based upon the language of the will, Clark intended that the real estate would be distributed to his heirs living at the time of Gerald's death according to the intestate laws existing in 1972.

[6] The cardinal rule concerning a decedent's will is the requirement that the intention of the testator shall be given effect, unless the maker of the will attempts to accomplish a purpose or to make a disposition contrary to a rule of law or public policy. *In re Estate of Brinkman*, 308 Neb. 117, 953 N.W.2d 1 (2021). To arrive at a testator's intention expressed in a will, a court must examine the decedent's will in its entirety, consider and liberally interpret every provision in a will, employ the generally accepted literal and grammatical meaning of words used in the will, and assume that the maker of the will understood words stated in the will. *Id.*

Considering the other provisions in the will, we find the county court's interpretation consistent with Clark's intention. In paragraph III of the will, Clark devised his residual estate "to my two daughters, . . . Snyder and . . . Davis, share and share alike." Had he intended that the distribution be the same under paragraph II, he could have utilized the same language. Because he did not, it is reasonable to assume he intended a different result. We assume that the maker of the will understood the words stated in the will. See *In re Estate of Brinkman, supra*.

Clark's closest living lineal descendants at the time of Gerald's death were two of his grandchildren. Consequently, the shares are to be divided at that level with each of the surviving grandchildren receiving one-ninth of the proceeds and the remaining great-grandchildren taking by right of representation. Giving full effect to the intentions of Clark as expressed in the language of his will, we find no error by the county court, which adopted the distribution as set forth by the copersonal representatives' petition to sell real estate and determine shares of heirs.

## CONCLUSION

We affirm the county court's order and distribution schedule.

AFFIRMED.